UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cynthia Bonnell,

      Plaintiff,

v.                               Civil Case No. 13-13589

FirstMerit Bank, N.A., *et al.*,      Sean F. Cox
                                       United States District Court Judge

      Defendants.

_____/

**<u>OPINION & ORDER</u>**

      Plaintiff filed this suit against her former employer, asserting employment discrimination

and retaliation claims, as well as other state-law claims. The action was removed to this Court

based upon federal-question jurisdiction over Plaintiff's claims brought under the Age

Discrimination in Employment Act ("ADEA") and her retaliation claim under Title VII. The

matter is currently before the Court on: 1) Defendants' Objections to an August 14, 2014 Order

issued by Magistrate Judge Hluchaniuk; and 2) Defendants' Motion for Summary Judgment. As

explained below, this Court concludes that the magistrate judge should have ruled, consistent

with this Court's rulings in another case, that Plaintiff is precluded from presenting evidence as

to her damages because she failed to provide mandatory disclosures regarding her damages and

failed to provide requested information regarding her damages even though Defendants

expressly requested that information during discovery. Moreover, Plaintiff failed to comply

with the magistrate judge's August 14, 2014 Order, as to damages, in any event. This Court

therefore rules that, pursuant to Fed. R. Civ. P. 37(c), Plaintiff is precluded from presenting

evidence as to damages. Given that Plaintiff seeks only monetary damages, Plaintiff cannot

proceed to trial. Moreover, even if this Court were to consider the merits of Defendants' Motion

for Summary Judgment, this Court would grant summary judgment in favor of Defendants as to

Plaintiffs' federal claims. This Court shall therefore dismiss Plaintiff's Complaint with

prejudice.

## BACKGROUND

Plaintiff Cynthia Bonnell ("Plaintiff" or "Bonnell") filed this action against Defendants

FirstMerit Bank, N.A. ("FirstMerit") and Dedee Byrd ("Byrd") in state court (collectively

"Defendants"). The action was removed to this Court on August 20, 2013, base upon federal

question jurisdiction. Plaintiff's Amended Complaint, filed on September 12, 2013, asserts the

following claims: "Violation of the Age Discrimination in Employment Act (ADEA)" Count I;

"Violation of Elliot-Larson Civil Rights Act against both Defendants" (Count II); "Retaliation

Under the Civil Rights Act against Both Defendants" (Count III); "Retaliation Against Both

Defendants Under the Elliot-Larsen Civil Rights Act" (Count IV[1]); "Intentional Infliction of

Emotional Distress against Both Defendants" (Count V); "Tortious Interference with Business

Relationships against Dedee Byrd" (Count VI); and "Breach of Contract against Bank" (Count

VII). (Docket Entry No. 3). Plaintiff's First Amended Complaint seeks only monetary damages;

Plaintiff does not request reinstatement or any other kind of injunctive relief.

The Court issued the initial Scheduling Order on October 17, 2013. This Court issued a

"2nd Scheduling Order" on March 7, 2014, that provided that discovery would close on May 5,

2014, and that the deadline for filing motions is June 6, 2014. (Docket Entry No. 15).

---

[1]Plaintiff's Amended Complaint labels this Count "VI" in error.

**The Discovery Motion And Defendants' Objections To Magistrate Judge's Order Ruling Upon It.**

On June 6, 2014, Defendants filed a Motion to Dismiss (Docket Entry No. 23) wherein they asked the Court to dismiss this action with prejudice for alleged discovery violations, or in the alternative to compel discovery and sanction Plaintiff. That motion detailed several discovery violations by Plaintiff and/or her counsel.  For example, the motion stated that Plaintiff produced a stack of 750 pages of documents relating to her case for the first time at her deposition.

Notably, the motion also stated that Plaintiff did not provide any initial disclosures under Fed. R. Civ. P. 26.  Not having received any initial disclosures as to Plaintiff's alleged damages, Defendants served a First Set of Interrogatories to Plaintiff on October 14, 2013.  (*See* Docket Entry No. 23-2).  Plaintiff served responses that stated, in pertinent part, as follows:

> 12.    For each item of damage you claim in this lawsuit, provide the following information:
>    a.    The nature of such damage;
>    b.    The dollar amount claimed for such damage;
>    c.    Identify all data relied on in calculating such dollar amount;
>    d.    State how the dollar amount was calculated; and
>    e.    State how each Defendant proximately caused such damage.
>
> **Answer: As of today's date, the damage amount has not been calculated.  I will need assistance in doing so, but all damage suffered by me was a result of Defendant Dedee Byrd becoming my supervisor/manager.**

(Docket Entry No. 23-4 at Pg ID 179) (bolding in original).

Defendants' Motion to Dismiss was referred to Magistrate Judge Michael Hluchaniuk "for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)" (Docket Entry No. 31).

On August 14, 2014, a "Stipulated Order Regarding Defendants' Motion To Dismiss" (Docket Entry No. 41) was entered that resolved some discovery disputes.

On that same date, August 14, 2014, Magistrate Judge Hluchaniuk issued an "Order

Regarding Defendants' Motion To Dismiss, Or In The Alternative, To Compel Discovery And

For Discovery Sanction" (Docket Entry No. 42). Notably, he issued an order, rather than a

report and recommendation, even though the motion was referred for issuance of report and

recommendation. In that order, the magistrate judge ruled with respect to various issues. As to

the issue of not providing Rule 26 disclosures and damages, the Order stated:

> A.    Defendants contend that plaintiff failed to serve initial discovery as
>        required by Rule 26(a)(1)(A). While it is clear that plaintiff did not serve
>        the discovery required by this rule, when it was supposed to be served,
>        defendants conceded that the only issue that remains deficient relates to
>        damages, which will be addressed separately. Given the lack of
>        significant prejudice to defendants as to this issue no sanctions are
>        appropriate, but plaintiff's counsel is cautioned that this is an important
>        aspect of discovery in federal court and sanctions can definitely be
>        imposed for this type of discovery deficiency.
>
> B.    Defendants had sought from plaintiff a detailed explanation of any claim
>        for damages maintained by plaintiff but plaintiff has not yet provided one.
>        By no later than August 27, 2014, plaintiff must provide to defendants a
>        detailed explanation of any damages claim she maintains in this case that
>        is responsive to those existing discovery requests submitted by defendants
>        as to damages. Plaintiff's failure to comply with this portion of the order
>        will result in plaintiff being prohibited from proving any damages that
>        have not been satisfactorily explained. This sanction is authorized by
>        Rule 37(b)(2)(A)(ii).

(*Id*. at 1-2). The Order also ruled, among other things, that: 1) Defendants could depose Plaintiff

a second time, at Plaintiff's expense, because Plaintiff has produced over 700 documents on the

date of her original deposition; 2) Plaintiff shall provide information regarding income and

provided that failure to comply "will result in plaintiff being prohibited from proving damages

based on lost income"; 3) because Plaintiff had destroyed certain evidence, she is "prohibited

4

from proving that she attempted to find replacement employment except as to the information

contained in Exhibit 13 to her deposition" and that Defendants would be entitled to a

destruction-of-evidence jury instruction at trial.  He also ruled as follows:

> F.    An issue was also raised as to a letter dated may 14, 2013, which is found
> at Exhibit I to defendants' motion.  (Dkt. 23).  Defendants contend that
> this letter, and questions about who authored the letter and whether
> plaintiff authorized the letter, will create confusion and may result in
> sympathy for plaintiff.  Defendants' concern regarding possible prejudice
> to them from potential sympathy for plaintiff is too speculative to find
> there is actual prejudice to defendants.  "While a final decision on the
> admissibility of the letter at trial in this matter will be up to the trial judge,
> the letter appears to be an admission under FRE 801(d)(2) of plaintiff and
> if offered by defendants it would be admissible for whatever proper
> purpose it would be offered for.  No sanctions are appropriate regarding
> this issue.

(*Id*. at 4-5).

Notably, however, discovery had closed back in May and the deadline for filing motions,

June 6, 2014, had already passed and Defendants had filed a Motion for Summary Judgment on

June 6, 2014.  Thus, Defendants were foreclosed from raising any issues regarding damages in a

dispositive motion prior to trial.

On August 28, 2014 (Docket Entry No. 46), Defendants filed Objections to the

magistrate judge's August 14, 2014 Order.  Defendants "object to two provisions of the Order on

the basis that they are clearly erroneous and contrary to law:

> (i)    Plaintiff's failure to provide her Initial Disclosures (and subsequent
> refusal to provide the required information in response to written
> discovery requests) was not substantially justified or harmless.  Magistrate
> Hluchaniuk applied the wrong test in declining to exclude the information
> Plaintiff failed to provide in her Initial Disclosures; and
> (ii)   Defendants will suffer prejudice as a result of Plaintiff's allegedly
> fabricated letter dated May 14, 2013.

5

(Defs.' Objs. at 2).  In support of Defendants' argument as to damages, they direct the Court to

this Court's own decision in *Stephen Michael LLC v. American Suzuki Motor Corporation*,

wherein this Court ruled that the plaintiff, who failed to provide initial disclosures regarding

damages, and failed to provide information regarding damages even though the Defendant

served discovery requests seeking that information, could not present evidence regarding

damages.  Defendants state the same thing happened here and that the magistrate judge did not

apply the right standard in looking at the issue:

> "Magistrate Hluchaniuk's determination that sanctions were not warranted
> because Defendants did not suffer 'significant prejudice' applied the wrong
> standard to a failure to provide Initial Disclosures.  As this Court noted in its
> order denying the plaintiff's motion for reconsideration in the Stephen Michael
> case, 'prejudice' is not one of the factors for determining whether sanctions are
> required for failure to provide Initial Disclosures . . .

(*Id*. at 13).  Defendants contend that "[b]ecause Plaintiff's failure to provide her Initial

Disclosures and discovery responses regarding her alleged damages, and because Plaintiff did

not meet her burden of establishing that her failure was substantially justified or harmless,

evidence of her alleged damages must be excluded from motions, at hearings and at trial

pursuant to Rule 37(c)."  (*Id*. at 13).

Moreover, as Defendants note in their Reply Brief, *even after Magistrate Judge*

*Hluchaniuk's August 14, 2014 Order, Plaintiff failed to provide sufficient information regarding*

*her damages*.  Rather than provide information responsive to Defendants' request, she simply

stated, with no further explanation and without identifying any supporting data or documents:

1.    Plaintiff's damages include the following:

| | |
|---|---|
| 5 years ($38,669.00 x 5 = $193,345.00) | $193,345.00 |
| Loss of 401K benefits | $9,667.25 |

| | |
|---|---|
| Mental and emotional damages | $150,000.00 |
| Medical bills not covered by insurance | $2,613.06 |

Total: $355,625.31

(Docket Entry No. 49-1).

### The Motion for Summary Judgment

On June 6, 2014, after the close of discovery, Defendants filed a Motion for Summary

Judgment.  (Docket Entry No. 24).

*As of July 18, 2014, Plaintiff had not filed any response to the Motion for Summary*

*Judgment.*  This Court therefore issued an order requiring Plaintiff to show cause, in writing, no

later than July 30, 2014, why the unopposed Motion for Summary Judgment should not be

granted.  (Docket Entry No. 33).

On July 30, 2014, Plaintiff's Counsel filed a response to the order, asking for another

month to file Plaintiff's already-overdue response brief. This Court gave Plaintiff an additional

week, until August 5, 2014, to file her overdue response brief.  Plaintiff finally filed her response

brief on August 5, 2014.

This Court's practice guidelines, which are expressly included in the Scheduling Order

issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

a.  The moving party's papers shall include a separate document entitled
Statement of Material Facts Not in Dispute.  The statement shall list in separately
numbered paragraphs concise statements of each undisputed material fact,
supported by appropriate citations to the record. . .

b.  In response, the opposing party shall file a separate document entitled
Counter-Statement of Disputed Facts.  The counter-statement shall list in
separately numbered paragraphs following the order or the movant's statement,
whether each of the facts asserted by the moving party is admitted or denied and

7

shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 30 at 2-3).

Along with their Motion for Summary Judgment, Defendants submitted a Statement of Material Facts Not In Dispute, which shall be referred to as "Defs.' Stmt."  Plaintiff then filed a Response to Defendant's Statement ("Pl.'s Stmt.") but, in violation of this Court's practice guidelines, it denies various statements but does not cite to any record evidence in support of the denials.  Plaintiff does, however, admit a number of Defendants' statements.

The following material facts are gleaned from the evidence submitted by the parties. They are undisputed, except where it is noted otherwise.

Plaintiff began working for Citizens Republic Bancorp, Inc., which later merged with Defendant FirstMerit Bank, N.A., in 1986 as a teller.  In 1989, Plaintiff began working at the bank's Call Center as a sales representative.  In 2007, Byrd became Plaintiff's supervisor. (Pl.'s Br. at 1).

During her deposition, Plaintiff testified that on Wednesday, March 14, 2012, she was in Byrd's office with Byrd.  (Pl.'s Dep. at 188-90).  Plaintiff testified that Byrd told her she was fired and that Byrd said she was "waiting for human resources to finalize everything."  Plaintiff testified:

Q.     Did Dedee Byrd say anything else to you on March 14th, 2012 which led you believe that you had been fired?
A.     Yes.  She said she is waiting for human resources to finalize everything

> and I was weeping and crying and pleading for my job.  And I said I was a
> good employee.  When she said, why should we keep you here and I said,
> well, I'm making my goals.
>
> Q.    Okay.  Did Dedee Byrd say anything else to you on March 14th, 2012
>        which led you to believe that you had been fired?
> A.    Other than that fact.  Then she just said I'm waiting for HR to finalize
>        everything.
> Q.    Okay.
> A.    And then she said "But you can go and sit at your desk and wait for them."
>        And I said, "No, I'm not going to have you humiliate me like you did
>        Michelle Brown."  Because it was humiliating what she did to her.  So she
>        said I could go home.

(Pl.'s Dep. at 189-90).

Plaintiff submitted an Affidavit that states that she tried calling Byrd and Tom Smela from Human Resources the next day but could not reach them.  (Pl.'s Afft. at ¶ 31).  She left Smela a message "explaining what happened and stating that I didn't know what to do."  (*Id*.). Plaintiff states that the following Monday "I called Tom Smela again and his voicemail indicated that he was in Wisconsin for the next few days and that a representative from Human Resources would follow-up on his calls."  (Pl.'s Afft. at ¶ 34).

Plaintiff's Affidavit states that "Stacey Raymond, a representative from Human Resources, called me on Tuesday and told me that she didn't care what had happened, and that I should go see a doctor and get on medical leave."  (*Id*. at ¶ 35).  Plaintiff followed that advice and "saw a doctor that did put me on medical leave, which was approved."  (Pl.'s Afft. at ¶ 37).

It is undisputed that "Plaintiff requested a leave under the Family and Medical Leave Act on March 21, 2012.  On that date, Plaintiff provided a medical excuse to Citizens from her doctor (Dr. Hanson), stating" that Plaintiff "is too ill to work at this time."  (Defs.' Stmt. at ¶ 116; Pl.'s Stmt. at ¶ 116 admitting Defendants' statement).

Plaintiff admits that in June of 2012, Stacey Redmond called her and asked Plaintiff if she "was ready to return to work, to which [Plaintiff] said that [she] would check with [her] doctor." (Pl.'s Afft. at ¶ 38).

Plaintiff's doctor said that Plaintiff should stay on leave, "and he sent such papers into Unum, the medical leave company." (Pl.'s Afft. at ¶ 39). It is undisputed that "Plaintiff did not return to work after the expiration of her 12-week FMLA leave on June 6, 2012." (Defs.' Stmt. at ¶ 117; Pl.'s Stmt. at ¶ 117 admitting Defs.' statement).

On July 5, 2012, Smela sent Plaintiff a letter on behalf of the Bank stating, in pertinent part:

> Your leave under Citizens' Leave of Absence and Family Medical Leave Policies and the Family Medical Leave Act, as amended, has reached the 12 week limitation, effective June 6, 2012. This letter will serve as notification that your Call Center Sales Representative position, held prior to commencement of your leave, may no longer be available should you be released to return to work. You may apply for open positions within Citizen if and when you are released to return to work. A copy of Citizens' Leave of Absence and Family Medical Leave Policies are included for your review.
>
> *If you continue on an approved leave of absence, you may be employed on* inactive status for a maximum of one year from your last day worked. At the end of that year, your employment with Citizens will terminate.

(Ex. R to Defs.' Br.) (italics in original)

It is undisputed that "[o]n May 1, 2013, Citizens Bank mailed a letter to Plaintiff noting that she had been on leave for over one year. *See* Smela Decl. at ¶ 16; 5/1/2013 Letter, attached as Exhibit S." (Defs.' Stmt. at ¶ 121; Pl.'s Stmt. at ¶ 121 admitting Defendants' statement). "The Bank asked Plaintiff to advise whether she was able to return to work with or without an accommodation. *See* Smela Decl. at ¶ 16; 5/1/2013 Letter, attached as Exhibit S." " (Defs.'

10

Stmt. at ¶ 122; Pl.'s Stmt. at ¶ 111 admitting Defendants' statement).

"In response, the Bank received a letter via fax on May 14, 2013 from Plaintiff's counsel's office. *See* Smela Decl. at ¶ 17. A copy of the 5/14/13 letter is attached as Exhibit T." (Defs.' Stmt. at ¶ 123; Pl.'s Stmt. at ¶ 123 admitting Defendants' statement). "In the letter, Plaintiff claimed that her employment had been terminated as of June 6, 2012." (*Id*.).

"Defendants' Counsel responded to the 5/14/13 fax from Plaintiff's counsel and advised that all correspondence must be sent to counsel." (Defs.' Stmt. at ¶ 125; Pl.'s Stmt. at ¶ 125 admitting Defendants' statement). "In addition, Defendants' counsel advised that Plaintiff had not been terminated and that the Bank was inquiring when Plaintiff intended to return to work. Plaintiff's counsel responded that he was not aware of the Bank's May 1, 2013 letter and that he would discuss the potential return to work with Plaintiff. A copy of Plaintiff's counsel's 5/23/14 Email is attached as Exhibit V." " (Defs.' Stmt. at ¶ 126; Pl.'s Stmt. at ¶ 126 admitting Defendants' statement).

On June 12, 2013, Defense Counsel sent an email to Plaintiff's Counsel, inquiring about whether Plaintiff was able to return to work. (Ex. W to Defs.' Br.). On June 28, 2013, Plaintiff's Counsel sent Defense Counsel an mail stating that Plaintiff was unable to return to work:

> Your last email made very clear the bank's position relative to Ms Bonnell returning to work. She is unable to do so. Had she been able to do so, litigation would not be commenced. Further, Ms. Bonnell never received Mr. Smela's May 1st letter or she would have responded to it.

(Ex. X to Defs.' Br.).

11

## ANALYSIS

**I.    This Court Sustains Defendants' Objection To Magistrate Judge Hluchaniuk's Order And Rules That Plaintiff Is Precluded From Presenting Evidence As To Her Damages.**

In challenging the magistrate judge's August 14, 2014 order, Defendants contend that "[b]ecause Plaintiff's failure to provide her Initial Disclosures and discovery responses regarding her alleged damages, and because Plaintiff did not meet her burden of establishing that her failure was substantially justified or harmless, evidence of her alleged damages must be excluded from motions, at hearings and at trial pursuant to Rule 37(c)."  (*Id.* at 13).

This Court agrees with Defendants.  That is, Plaintiff is precluded from presenting evidence as to her damages for the very reason that the plaintiff in *Stephen Michael LLC v. American Suzuki Motor Corp.* was:

> Under Rule 26, "a party must, without awaiting a discovery request," provide initial disclosures to the other parties. Among the required Rule 26 disclosures are disclosures regarding damages:
>
> > (iii) A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;
>
> FED. R. CIV. P. 26(a)(1)(A)(iii).
>
> In violation of Rule 26, Plaintiff failed to produce Rule 26 Disclosures regarding damages to Defendant.
>
> Plaintiff also failed properly respond to Defendant's discovery requests pertaining to damages. During discovery, Defendant served document requests to Plaintiff, seeking documents regarding Plaintiff's alleged damages and Plaintiff responded as follows:

12

9. [Produce] All documents evidencing or supporting all damages alleged in the First Amended Complaint.

RESPONSE: Damages are still being calculated.

(Def.'s Ex. G). Defendant also served timely interrogatories, asking Plaintiff to describe in detail the damages sought by Plaintiff and Plaintiff responded as follows:

INTERROGATORY NO. 12: Describe in detail the damages you have allegedly sustained, including the amount of every type of actual, compensatory, liquidated or punitive damages for which you seek compensation in this lawsuit, stating the total amount of your alleged injury and how your damages were calculated.

ANSWER: Those damages have not yet been calculated, and discovery is ongoing.

(Def.'s Ex. A–4). Plaintiff never supplemented those discovery responses.

Pursuant to Rule 37(c), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c).

Here, Plaintiff's discovery failures are significant and prejudice Defendant. Because Plaintiff did not provide any discovery as to its alleged damages during discovery, Defendant was unable to obtain discovery as to how the alleged damages were calculated or review any supporting documentation. The failure was not harmless.

In addition, Plaintiff has not established that its failure was "substantially justified."
. . . .

Given Plaintiff's significant discovery failures, the Court shall strike the Cizmar Affidavit. Because Plaintiff has not offered any other evidence in support of its claims for monetary damages, the Court shall grant summary judgment in favor of Defendants as to Plaintiff's claims for monetary damages. *See Bessemer & Lake*

13

*Erie Railroad Co. v. Seaway Marine Trans*. 596 F.3d 357 (6th Cir.2010).

Accordingly, Plaintiff may not seek monetary damages at trial.

*Stephen Michael LLC v. American Suzuki Motor Corp.*, 2011 WL 6339045 (E.D. Mich. 2011).

Moreover, in rejecting a motion for reconsideration in that case, this Court explained that the four-factor test that the magistrate judge appears to have applied here, which includes consideration of prejudice to the Defendant, is not the right test:

Plaintiff's Motion for Reconsideration, Plaintiff asserts that "[p]alpable error was committed because this Court did not consider the four relevant factors (the *Regional Refuse* test) when deciding what sanction, if any, to apply in this case, as set forth by the Sixth Circuit. *See, Freeland v. Amigo*, 13 F.3d 1271, 1277 (C.A. 6 1997); *Peltz v. Moretti*, 292 Fed Appx 475 (C.A.6 2008)." (Docket Entry No. 57).

This very same argument was made by the plaintiff in *Bessemer* and was rejected by the United States Court of Appeals for the Sixth Circuit:

[Plaintiff contends] that the district court used the wrong standard in evaluating whether discovery sanctions were appropriate. Rather than Rule 37(c)'s 'substantially justified or harmless' standard for determining whether to excuse inadequate disclosures, [Plaintiff] claims that the district court should have used a four-part test used to determine the appropriateness of dismissal as a discovery sanction under Rule 37(b). *See Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir.2005) (to justify dismissal as a discovery sanction under Rule 37(b), courts should consider '(1) evidence of willfulness or bad faith; (2) prejudice to the adversary; (3) whether the violating party had notice of the potential sanction; (4) whether less drastic sanctions have been imposed or ordered'). But that four-part test is 'an altogether different test' than the one for exclusion of the evidence under Rule 37(c), for which 'the test is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.' *Vance ex rel Hammons v. United States*, 182 F.3d 920 (6th Cir.1999) (rejecting a similar argument).

14

*Bessemer,* 596 F.3d at 370.

*Stephen Michael LLC v. American Suzuki Motor Corp.*, 2012 WL 12768 (E.D. Mich. 2012).

      Here, there is an *even stronger case* for not allowing Plaintiff to present evidence of her damages. Like the plaintiff in *Stephen Michael LLC,* Plaintiff failed to provide her mandatory disclosures regarding damages under Rule 26, *and* failed to provide requested information regarding damages when Defendants expressly asked for that information. And that failure is not harmless. Given the rather unique facts of this case (ie., Plaintiff requested and was granted FMLA leave after she was allegedly fired, and was offered to return to work but said she is unable to work, and Plaintiff is precluded from admitted certain evidence to establish that she mitigated her damages) Defendants would likely have had grounds for a dispositive motion relating to damages, but were prevented from filing such a motion prior to trial due to Plaintiff's discovery failures.

      Magistrate Judge Hluchaniuk was quite generous in his rulings and gave Plaintiff a huge break. Even so, after being expressly warned that she would be "prohibited from proving any damages that have not been satisfactorily explained," Plaintiff *still failed* to provide a detailed explanation of her damages as ordered by the magistrate judge.

      This Court therefore rules that, pursuant to Fed. R. Civ. P. 37(c), Plaintiff is precluded from presenting any evidence to establish damages at trial.

      Given this ruling, the Court concludes that Plaintiff's case must be dismissed because she is seeking monetary damages exclusively. That is, her complaint does not request reinstatement or any other kind of injunctive relief.

## II.    Defendant's Motion For Summary Judgment

Moreover, even if this Court allowed the above order to stand, excused Plaintiffs' failure to comply with the magistrate judge's August 14, 2014 Order, and allowed Plaintiff to present evidence of her damages, this Court would nevertheless grant summary Judgment in favor of Defendants as to Plaintiffs' federal claims.

A.      **Plaintiff's Age Discrimination Claims (Counts I & II)**

Counts I and II of Plaintiff's complaint allege age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. ("ADEA") and age discrimination under Michigan's Elliot-Larsen Civil Rights Act ("the ELCRA").  At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).  "It does not require the fact finder to draw any inferences to reach that conclusion.  *Id*.  Evidence of discrimination is not considered direct evidence unless an unlawful motivation is explicitly expressed.  *Id.*

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Both parties acknowledge that the *McDonnell Douglas* framework is applied to age discrimination claims brought under the ADEA and the ELCRA and that Plaintiff bears the burden of establishing a prima facie case.

Once a plaintiff establishes such a prima facie case, the burden then shifts to the

16

employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge.  If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination.  *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

### 1.    Direct Evidence

In responding to Defendants' motion, Plaintiff first asserts that direct evidence exists.  But it is clear from Plaintiff's brief that she misunderstands what constitutes direct evidence.  Plaintiff argues:

> Had Bonnell been the only employee aged close to 50 or above who was terminated during Byrd's watch, then an argument that there was direct evidence of discrimination could not be made.  But in the present case, however, Sue Barish, Joeline Everett, Ann Fraile, Michele Brown, Jan Lam, who didn't wait to be terminated , but instead left the sales, department, then Bonnell, are all older employees who were terminated by Byrd and the Bank in late 2010 to 2012.  Further, Byrd's mean-spirited, berating, insulting, intimidating, and offensive comments and behavior, in connection with all the older individuals who were terminated before Bonnell, could lead the Court to determine that there was, in fact, direct evidence of age discrimination.

(Pl.'s Br. at 7).

The Court rejects Plaintiff's argument.  Even if there is evidence that other older employees had previously been terminated by Byrd, that does not constitute direct evidence that Plaintiff was terminated because of her age.

As stated *supra*, direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions.  *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).  Evidence of discrimination is not considered direct evidence unless an unlawful motivation is explicitly

17

expressed. *Id.* For example, a facially discriminatory employment policy or a corporate decision maker's express statement to remove employees in the protected groups is direct evidence. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Here, there is simply no direct evidence to establish that Plaintiff was terminated because of her age.

### 2.   Circumstantial Evidence

Because Plaintiff's claim that she was terminated because of her age is not supported by any direct evidence, she must proceed under the circumstantial evidence approach.

With respect to both her ADEA and her ELCRA claims, the standard is the same. To establish a prima facie case of disparate treatment without the benefit of direct evidence of the employer's discriminatory motives, an employee must show that 1) she is a member of a protected class; 2) she was qualified for the position, 3) she was subject to an adverse employment action, and 4) she was replaced by someone outside the protected class or was "treated differently than similarly situated non-protected employees." *McCarthy v. Ameritech Pub., Inc.*, __ F.3d __, 2014 WL 3930572 (6th Cir. 2014); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

Here, Defendants contend that Plaintiff cannot establish the second or fourth prongs of a prima facie case.

### a.   Second Prong

The second prong goes to whether Plaintiff was qualified for her position. "In considering whether a plaintiff is qualified and thus meets the second prong of her prima facie burden, the case law is clear that '[a] court must evaluate whether a plaintiff established his

qualifications independent of the employee's proffered nondiscriminatory reasons for discharge . . . [and] be careful not to conflate the distinct stages of the *McDonnell Douglas* test.'" *White v. Columbus Metro. Housing Auth.* , 429 F.3d 232, 242 (6th Cir. 2005).  In doing so, the Court looks to the employee's qualifications, such as her education, experience in the relevant industry, and possession of the general skills required for the position.  *Kulik v. Medical Imaging Resources, Inc.*, 325 F. App'x. 413, 414 (6th Cir. 2009).  Given that Plaintiff was successfully employed at the Bank for several years, Plaintiff can meet this prong.

> **b.      Fourth Prong**

Defendants' Motion also challenges Plaintiff's ability to establish the fourth prong of a prima facie case.

Again, as the fourth prong, Plaintiff must establish that she was replaced by someone outside the protected class or that she was "treated differently than similarly situated non-protected employees."  *McCarthy v. Ameritech Pub., Inc.*, __ F.3d __, 2014 WL 3930572 (6th Cir. 2014); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

> **1)      Plaintiff Has Not Established That She Was Replaced By Someone Outside Of The Protected Class.**

In response to Defendants' challenge to her ability to establish the fourth element of a prima facie case, Plaintiff asserts that her "termination was just in a long line of older employees in the sales department being terminated by the Bank and Byrd.  The inference that Bonnell's termination was based upon her age is magnified by the conduct of the Bank and Byrd in the termination of older employees and hiring of younger employees in their place."  (Pl.'s Br. at 7). Other portions of Plaintiff's brief, and her affidavit, assert that other older employees that were

19

terminated and/or transferred from Byrd's department prior to the time of Plaintiff's alleged firing were replaced by younger employees. But Plaintiff has not put forth any evidence to establish that *she* was replaced by a younger employee. Thus, Plaintiff cannot establish the fourth prong by showing that she was replaced by someone outside of the protected class.

### 2) Plaintiff Has Not Established That She Was Treated Differently Than Any Similarly-Situated Non-Protected Employees.

Defendants assert that "Plaintiff cannot identify any other employee outside of her protected category who engaged in the same or similar conduct and was treated more favorably." (Defs.' Br. at 5). Defendants further contend that the relevant evidence belies Plaintiff's claims of age discrimination:

> [A] younger male employee failed to meet his goals and also received corrective action. See Fact No 131. In addition, one of the top two performing Sales Representatives from 2007 through 2012 as several years also than Plaintiff and was not subject to corrective action. See Fact No. 132.

(Defs.' Br. at 5). Defendants submitted a Declaration from Byrd regarding those employees.

In response to Defendants' properly-supported motion, the argument section of Plaintiff's brief that addresses whether she can establish a prima facie case does not assert that she can show that similarly-situated non-protected employees were treated more favorably than her. Nevertheless, the Court notes that her affidavit states that she understands that a younger employee was terminated for not meeting his goals, but then asserts that Plaintiff "never saw her" (Byrd) berate younger employees. That Plaintiff did not see Byrd do something is not the same as establishing it did not occur. The Court concludes that Plaintiff has not established the fourth prong of a prima facie case by virtue of showing that similarly-situated non-protected

20

employees were treated more favorably.

Given this ruling, Plaintiff's age discrimination claims fail and the Court need not consider Defendants' additional argument that Plaintiff cannot establish pretext.

**B.     Plaintiff's Retaliation Claims (Counts III & IV)**

The parties agree that in order for Plaintiff to pursue a retaliation claim under either Title VII or Michigan's Elliott-Larsen Act she must establish, among other things, that she engaged in protected activity.

Defendants' motion asserts that Plaintiff cannot establish that she engaged any protected activity.

In response, Plaintiff asserts that she complained about her treatment by Byrd to Human Resources in May of 2011 and directs the Court to page two of her affidavit. Page two of Plaintiff's Affidavit, however, simply states: "When I made a complaint about my perceived treatment in May, Dedee's attack on me went to another level." (Pl.'s Afft. at ¶ 2). Plaintiff's Affidavit does not provide any details as to the nature of the complaint she made to Human Resources.

Defendants attached the written complaint that Human Resources received from Plaintiff in May of 2011. (Ex. M to Defs.' Br.). In her written complaint about Byrd – *that spans five pages* – Plaintiff complains about perceived harassment by Byrd that consists of Byrd badgering Plaintiff and "mircomanaging" her performance. Notably, however, Plaintiff *does not* claim that she is being discriminated against, or being picked on, based on her age or any other protected class. The written complaint also does not allege that Byrd had made any remarks about Plaintiff's age or any other protected class.

21

Moreover, in support of their motion, Defendants submitted a Declaration from Smella that states that Plaintiff also made an oral complaint to him about Byrd's management style in January of 2012, but that Plaintiff has "never alleged to me that Ms. Byrd's activities were prompted by her age or other protected characteristics." (Smella Decl. at 3).

Accordingly, Plaintiff's retaliation claims (Counts III & IV) fail because Plaintiff cannot establish that she engaged in any protected activity prior to the events of which she complains.

## CONCLUSION & ORDER

For all of the reasons set forth above, IT IS ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: October 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager